## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEBORA L. LAMB,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| | |
| **v.** | |
| | |
| **MONTGOMERY TOWNSHIP,** | **NO.  15-6759** |
| **LAWRENCE J. GREGAN, KEVIN** | |
| **COSTELLO AND THREE JOHN AND** | |
| **THREE JANE DOES,** | |
| **Defendants.** | |

## OPINION

Plaintiff Deborah Lamb brings this case against her former employer, Montgomery Township (the "Township"), her former supervisors, three unidentified John Doe defendants, and three unidentified Jane Doe defendants[1] under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e *et seq.* and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.* Lamb claims that she was subjected to a hostile work environment, sex discrimination, and retaliation for protected activity. Before the Court is Defendants' motion for summary judgment on all of Plaintiff's claims. In opposition to that motion, Plaintiff produced the Declaration of Maria Brogna ("Declaration"), which sets forth both expert opinion and factual information. Defendants have filed a Motion to Strike the Declaration, as well as a *Daubert* Motion to preclude Brogna's testimony.

---

[1] Plaintiff's claims against the John and Jane Doe defendants, whom Plaintiff has failed to identify despite discovery, are dismissed pursuant to Federal Rule of Civil Procedure 21. "On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. The "[u]se of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified. If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed." *Blakeslee v. Clinton Cnty.*, 336 F. App'x 248, 250 (3d Cir. 2009) (citations omitted).

## I.      FACTUAL BACKGROUND

### A.  Plaintiff's Termination

Plaintiff was hired in June 1998 as a laborer in the Township's Public Works

Department. In 2001, she was promoted to Traffic Signal Assistant. Although she was advised

by her boss that she would be promoted to Facilities Foreman, a male colleague, Glenn Heberlig,

got that position instead in January 2005. That same month, Plaintiff was promoted to Traffic

Signal Coordinator and Heberlig became her supervisor. Plaintiff remained in that position until

she was fired for theft in 2013 after an incident in which Heberlig's iPhone went missing from

the Public Works Department break room. The police were called to investigate. A detective

spent the day interviewing employees, including Plaintiff, and searching all employees' vehicles,

including Plaintiff's. The detective obtained consent from all employees – male and female – to

search their vehicles. During Plaintiff's interview with the detective, she acknowledged that she

had been in the break room alone that morning, but denied taking the phone.

Two days later, a Township resident found the missing iPhone. He turned the phone into

the police station and showed the investigating detective exactly where he had found it – on a

grassy area near the intersection of Enterprise and Commerce, around 0.3 miles from the Public

Works Department building, about five feet from the curb.

The detective advised Heberlig that his phone had been found, but did not tell anyone

else at the Department about the discovery. The detective returned to the Department's front

office to find out from the director's administrative assistant the times at which various crews

had left the garage the morning of the theft. Plaintiff was in the front office area during this

conversation, but asserts that she did not overhear it.

The detective went from the Department building to a position from which he could see

the intersection where the phone had been found. About 20 minutes later, he saw Plaintiff

driving down Commerce Drive in the Township's bucket truck. He watched as Plaintiff turned

from Commerce onto Enterprise, slowed the truck down almost to a stop, pulled very close to the curb where the phone had been found, looked out of the truck window towards the curb, and then drove the truck around the block and back to the Public Works Department building. He followed her back to the building and confronted her about what he had seen. Plaintiff explained that she was on her way to repair a pedestrian crossing light but slowed down to see if she had the necessary paperwork with her; then, realizing that she had left the paperwork at the Public Works Department building, she returned there. The detective asked her to go to the police station and, when she did, to provide a saliva sample for DNA testing. Plaintiff consensually provided a saliva sample. As she provided the sample, Plaintiff told the detective that she might have handled Heberlig's iPhone when it was lying on the break room table. Heberlig later stated that he never left his iPhone unattended in the break room or let Plaintiff handle it. The DNA report, which came back after Plaintiff had been terminated, was inconclusive in that neither Plaintiff nor Heberlig's DNA was found on the phone.

Plaintiff was placed on paid administrative leave on March 1, 2013 while the Township conducted an internal investigation into the incident. The detective conducted additional interviews, including with Township employee Don Johnson, who had been working with Plaintiff the morning of the theft. Johnson reported that, around 8:00 a.m., just as they were about to leave the building, Plaintiff retrieved her gloves from her personal car. When she threw them on to the dashboard of the truck, they made a "clunk" sound, as if something solid was inside one of the gloves. Johnson also mentioned that Plaintiff seemed to be in a hurry to get out of the yard.

Meanwhile, the Township had conducted its own internal investigation into the iPhone incident, interviewing and taking statements from all employees who were present on the day of the theft, including Plaintiff. The investigators created a timeline of employee movements on the morning of the theft. A number of employees indicated that they believed Plaintiff to be

3

responsible for taking the iPhone. On March 18, 2013, the investigating detective relayed his suspicion to the Township that Plaintiff was responsible for the theft.

The Standards of Conduct in the Township Employee Handbook explicitly prohibit theft of a co-worker's property. Given the investigations' conclusions, on March 20, 2013, Plaintiff was notified by letter that she may be subject to disciplinary action up to and including discharge. The letter explained that based on the Township's internal investigation, the police report, and other information relating to the criminal investigation, the Township believed that she had taken the iPhone. Plaintiff was provided with an opportunity to review the notes of her interviews and to provide additional information. She took advantage of that opportunity and, on March 26, 2013, sent a response letter denying the theft, noting derogatory comments made about her by coworkers regarding her sexuality, and indicating that the Township was retaliating against her for injury-related work restrictions and a workers' compensation claim stemming from that injury.

On April 4, 2013, Plaintiff was terminated for the theft of Heberlig's iPhone, as well as her "lack of candor" during the Township's internal investigation into that incident. The letter notifying Plaintiff of her termination came from Lawrence Gregan, the Township Manager, who made the decision to terminate her. Prior to making that decision, Gregan spoke with Human Resources staff and labor counsel and, while taking into consideration Plaintiff's denials as expressed in her March 26, 2013 letter, ultimately concluded that the findings of the police and Township investigations warranted her termination.

Plaintiff contends that the Township normally follows a progressive discipline policy, and that its failure to do so prior to terminating her represents a policy violation. Defendants point out that the policy does not "guarantee . . . any specific procedure the Township may use before discharge," and maintain that Plaintiff was terminated rather than progressively disciplined because the theft represented a "significant break in trust."

4

Plaintiff argues that the Township's termination policy mandated oral notification of the termination, followed by written notice. Defendants acknowledge that Township policy recommends oral and written notification of termination, and admit that Plaintiff was not orally notified. Defendants respond, however, that this represents a single, minor deviation from the procedure set forth in the Employee Manual, and reiterate that the Manual explicitly does not guarantee any specific termination procedure for non-uniformed employees like Plaintiff.

After Plaintiff's termination, she was initially denied unemployment compensation because the Township reported to the Office of Unemployment Compensation ("UC") Benefits that she had been terminated for willful misconduct. Later in June 2013, having concluded that the Township had provided insufficient information to show that Plaintiff had committed a dishonest act, the Office of UC Benefits determined that Plaintiff was after all eligible for unemployment compensation.

### B.   EEOC Proceeding and Instant Suit

On July 3, 2012, Plaintiff filed a dual charge of discrimination with the EEOC and the Pennsylvania Human Relations Commission ("PHRC"). The charge alleged discrimination based on sex, hostile work environment, and retaliation for prior EEO activity. The parties do not dispute that Plaintiff properly exhausted her administrative claims and timely filed suit in this Court on December 23, 2015.

### C.   Previous Thefts in the Public Works Department

Plaintiff describes a number of incidents perpetrated by coworkers during the course of her employment at the Public Works Department that she characterizes as thefts. She contends that these incidents exhibit a pattern of sex discrimination whereby Defendants treated male employees more favorably than female employees when they were victims or suspected perpetrators of theft.

1.   <u>Theft of $500 Cash From Heberlig</u>

At some point during or after 2010, $500 was taken from Heberlig's lunchbox. The Director of the Public Works Department, Kevin Costello, held a staff meeting about the incident. He then placed an "honesty chest" in the break room, announcing to staff that whoever took the money should "put it back, no questions asked." At Heberlig's request, the police were not called to investigate. There was no final determination that a theft had actually occurred, and no employee was implicated in the incident.

### 2. Photos of Plantiff's Son

In early 2008, two photos of Plaintiff's son were taken from her work area. The parties dispute whether the photos went missing or were torn up and placed on Plaintiff's desk. Plaintiff complained of the incident to Costello. The parties agree that this incident is properly characterized as a theft. They disagree as to whether Costello investigated the incident. Defendants maintain that Costello conducted an informal internal investigation. Plaintiff says he did not. They agree that Costello did not locate the pictures or identify anyone responsible.

### 3. Scrap Fund

During Plaintiff's employment at the Township, Public Works Department employees sold scrap metal – discarded Township property such as street lights, traffic control signs, and rusted metals – and deposited the cash into a bank account, the balance of which hovered around $400. This "scrap fund" was used to cover the cost of the Department's staff parties and birthday presents.

There is some question about who knew of the fund's existence. Costello recollects notifying Gregan of the fund, but Gregan maintains that he was not aware of it until he heard Costello's deposition testimony in this case. Gregan acknowledged that any funds generated should have been deposited into the Township's general funds. The account has now been closed and the funds transferred to the Township's Finance Department.

Plaintiff characterizes selling the scrap metal – which was Township property, albeit discarded property – and depositing the receipts into a private account as theft. Defendants dispute this characterization. Plaintiff contends that, while no male employees were terminated for scrapping metals, one female employee – Carol Berger – was fired for taking cash from the scrap fund.  Defendants deny that Berger was terminated for taking money from the fund.

4. <u>Work on Personal Vehicles and Homes</u>

During Plaintiff's employment with the Township, Public Works Department employees performed maintenance work on personal vehicles and homes during the work day. She characterizes this conduct as theft, contending that it occurred during paid work time. Plaintiff acknowledges that she and her colleagues worked on Plaintiff's personal vehicle and home, but asserts that this occurred during break times or after work.

Defendants recognize that Costello permitted employees to engage in personal tasks during the work day, but maintain that employees would make up for the hours later in the day or by using vacation, sick, or "comp" time. Plaintiff testified that she did not review records to determine whether the employees she observed working on personal vehicles or homes made up for the time in this manner.

5. <u>Firearms Taken from Police Armory</u>

In 2002 and 2003, four male Township police officers took firearms from the Police Department armory. A sergeant gave some of the firearms, which had been turned in by a civilian, to other officers and took the rest for himself. Plaintiff characterizes this incident as a theft. The Township conducted an investigation into the incident in 2003. None of the officers involved were criminally prosecuted.

6. <u>Other Thefts During Plaintiff's Employment</u>

Plaintiff recalls two other thefts that occurred during her employment. First, at some point prior to 2004, Heberlig had a SpongeBob SquarePants toy taken from his desk. Plaintiff

does not recall "anyone doing anything about it or Glenn [Heberlig] pushing the issue." Costello informally investigated the missing toy, but did not document the incident in a report. Second, Plaintiff recalls that at some point during her employment with the Township, prior to 2004, Costello's Administrative Assistant reported change missing from her desk. It is not clear from the record whether this incident was reported or how the Township responded.

### D.   Other Instances of Alleged Sex Discrimination at the Township

In addition to Plaintiff's contention that men were treated more favorably than women when the Township dealt with allegations of employee theft, Plaintiff asserts that there were other instances of sex discrimination, as follows.

#### 1.   Maria Brogna and Richard Lesinski's Lawsuit Against the Township

In 2007, Plaintiff told two former Township Police Department employees, Maria Brogna (formerly Lesinski) and Richard Lesinski, that she had heard Montgomery Police Chief Richard Brady state that a female officer would never work in his department. Brogna and Lesinski subsequently filed an employment discrimination lawsuit against the Township. Plaintiff did not testify in a deposition or participate in any proceeding relating to that claim.

Costello denies having any knowledge of Plaintiff's involvement in the suit, as does Gregan, the manager who terminated her. Plaintiff agrees that she did not tell Gregan about her involvement, but she points to a Declaration by Brogna stating that in the course of Brogna and Lesinski's lawsuit, Costello told Brogna that Plaintiff should not act as a witness for Brogna or it would "bite her."

#### 2.   Angela Nino's Sexual Harassment Complaint

Plaintiff asserts that a female former Montgomery Township police dispatcher, Angela Nino, complained to the Township and Police Chief Brady that a male police officer had subjected her to unwanted sexual advances. Plaintiff does not offer an approximate date for this incident, or for Nino's complaint. According to Plaintiff, the Township investigated Nino's

complaint and determined it to be valid, but did not take any disciplinary action against the male officer and later provided him with a positive reference.

### E.   Plaintiff's Work Assignments, Injury, and Workers' Compensation Leave

Plaintiff also refers to a litany of complaints she had of her treatment by the Township during the course of her employment. She contends that she was required to work in a dangerous work environment by performing maintenance in a rental property that had mold. She acknowledges, however, that both male and female employees worked in the property when the Township knew of the mold, and that once the extent of the mold problem became clear, the Township undertook mold remediation and provided her with safety equipment.

Additionally, Plaintiff complains that she made a request for outside employment that was unfairly denied, while male employees were approved to take outside employment or took unauthorized second jobs with the Township's knowledge. Defendants respond that the Township denied Plaintiff's request because of a potential conflict with her emergency response availability, given that Plaintiff was the primary Public Works employee responsible for handling emergency calls involving streetlights and traffic lights.

Further, Plaintiff lists complaints related to her period of workers' compensation leave between 2011 and 2012. After injuring her hand while at work, she made a workers' compensation claim and took leave. Plaintiff contends that a Human Resources staff member advised her that she would not receive workers' compensation benefits, but she acknowledges that she ultimately received them. Plaintiff received full pay while on leave and full coverage of the medical treatment for her hand injury.

While she was out on workers' compensation leave, Plaintiff learned that her desk had been relocated from the main office of the Public Works building to the back room due to water damage caused by a broken pipe. She later perceived this act to be discriminatory, but has not identified why. Further, Plaintiff disliked that the Township required her to undergo a Functional

Capacity Evaluation, an independent medical examination, and a drug test before permitting her to return to work in September 2012.

### F. Derogatory Comments Based on Race, Sexual Orientation, and Sex

In addition, Plaintiff highlights a series of comments she heard from her co-workers which derogated people based on their race, sexual orientation, and sex.

After her return to work in September 2012, Plaintiff – who is gay – overheard coworkers and Heberlig laughing about "faggots" and "gays" as she was exiting the restroom. They fell silent when they noticed her. When she asked a co-worker if "the guys talk about me like that," he confirmed that they did. Around the same time, she heard coworkers and Heberlig commenting that "Hispanics and Mexicans" should be required to speak in English at lunchtime. She found the comments particularly offensive because her son is Hispanic. She also noted how, throughout her employment at the Township, coworkers used "the N word" and regularly made comments that "people that own 7-Elevens are all dot heads."

Finally, Plaintiff described how once when she stopped for a bathroom break from snow-plowing her co-worker commented: "You're back again? If you were guy, you could just piss on the side of the truck."

The Township acknowledges that these comments are inappropriate under its sexual harassment and anti-harassment policies, but notes that Plaintiff did not recall reporting any of the comments, as required by those policies. Plaintiff maintains that reporting them to Costello would have been futile because he "wouldn't have done anything," and she "would never go over Kevin Costello's head" for fear of disciplinary action.

## II.   MOTION TO STRIKE

Turning first to Defendants' Motion to Strike the Declaration of Maria Brogna, the Motion shall be granted with respect to Brogna's expert testimony. The Declaration is, in essence, an expert report: It offers expert opinions regarding the sufficiency and appropriateness

of the police investigation into the iPhone theft for which Plaintiff was terminated. It should have been produced in accordance with this Court's Scheduling Order, which set an April 20, 2016 deadline for the production of expert reports, and Federal Rule of Civil Procedure 26. Fed. R. Civ. P. 26(a)(2)(B)(i), (a)(2)(D). The Declaration was not produced by the deadline. Rather, Plaintiff attached it to her response to Defendant's summary judgment motion.

By attaching the Declaration to her brief, Plaintiff sought to circumvent the Court's Order and Rule 26. Indeed, the record shows that Plaintiff has, at every turn, tried to prevent Defendant from obtaining Brogna's testimony. When Defendants subpoenaed Brogna for a deposition, Plaintiff's counsel wrote to the Court asserting, *inter alia*, that Defendants' attempt to depose Brogna was improper as she was an expert witness for Plaintiff. On the assumption that Plaintiff had identified Brogna as an expert witness and that her deposition would be taken during the expert discovery period following the production of a report, Defendant chose not to move to compel Brogna's deposition at that time. The expert report deadline passed without Plaintiff producing a report by Brogna, and with no explanation for that failure. Rather, Plaintiff simply attached Brogna's report to her brief in opposition to summary judgment. Defendants argue that, given this series of events, the Declaration must be stricken.

Rule 37 of the Federal Rules of Civil Procedure governs sanctions against a party who fails to provide discovery as required by the discovery rules or a court order. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). If an expert report is stricken, that effectively precludes the expert from testifying as to the subject matter and opinions contained in the report. *See, e.g.*, *Kenexa Brassring, Inc. v. Taleo Corp.*, 751 F. Supp. 2d 735, 759 (D. Del. 2010); *Inline Connection Corp. v. AOL Time Warner Inc.*, 472 F. Supp. 2d 604, 615 (D. Del. 2007).

11

Although the Federal Rules clearly contemplate the exclusion of untimely expert disclosures (and the concomitant exclusion of expert testimony), the Third Circuit has cautioned that because "[t]he exclusion of critical evidence is an extreme sanction, it should not be imposed where an untimely or improper expert disclosure amounts to only a "slight deviation from pre-trial notice requirements" or occasions only "slight prejudice" to the movant. *In re Paoli R.R. Yard PCB Litig.* (*"Paoli II"*), 35 F.3d 717, 791-92 (3d Cir. 1994) (internal quotation marks and citations omitted). Instead, the remedy of exclusion should be reserved for circumstances amounting to "willful deception or flagrant disregard of a court order by the proponent of the evidence." *Id.* (internal quotation marks and citations omitted). Rule 37 sanctions are available to the district court "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1976); *see also Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977) (setting forth factors to be weighed in considering whether to exclude untimely or otherwise improper expert disclosure), *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985); *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997).

Because Plaintiff failed to identify Brogna as a witness as required by Rule 26, her Declaration may be stricken unless such failure was harmless or substantially justified. Fed. R. Civ. P. 37(c)(1). Plaintiff seeks to justify the failure to disclose, arguing first that Plaintiff *did* timely identify Brogna as an expert and fact witness; second, that Defendants did not identify any expert witnesses; and third, that the delay in disclosing Brogna's Declaration was caused by Defendants' delay in disclosing the Township's police investigation report.

Plaintiff has not established that the failure to disclose was substantially justified. First, Plaintiff's contention that she timely identified Brogna as an expert and fact witness before the deadline is disingenuous. Plaintiff classified Brogna as an expert witness and used that

classification to avoid having Defendants depose Brogna as a fact witness. Plaintiff then failed to produce an expert report until well past the deadline to depose expert witnesses, thereby avoiding having Defendants depose Brogna as an expert witness.

Second, it is irrelevant for the purposes of Defendants' Motion to Strike that Defendants did not identify any expert witnesses.

Third, Defendants produced the portion of the police report within the Township's internal investigation file on March 17, 2016 – nearly a month before the fact discovery deadline. Once Defendants received the full police investigative file from the Township Police Chief, they supplemented their document production, disclosing the file to Plaintiff on April 15, 2016 – two days after the close of fact discovery. Given this late production, Plaintiff could have – but did not – request an extension of the expert discovery deadlines. Rather, Plaintiff waited nearly two months after obtaining the police investigative file, in the context of summary judgment briefing, to produce Brogna's Declaration. This is not a slight deviation from pre-trial notice requirements, but a flagrant disregard of a court order by the proponent of the evidence. *Paoli II*, 35 F.3d at 791-92.

Nor is Plaintiff's failure to disclose harmless. Defendants had no opportunity to depose Brogna and have been denied the opportunity to question her about her Declaration. Because of the prejudice to Defendants and the lack of substantial justification offered by Plaintiff, Defendants' Motion to Strike Brogna's Declaration shall be granted with respect to any expert testimony included in the Declaration. The factual testimony in the Declaration, however, is not stricken for the purposes of Defendants' summary judgment motion.

Given that Brogna's proposed expert opinions shall be stricken, there is no need for the Court to consider Defendant's Motion to preclude such testimony pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 587-89 (1993) and Federal Rule of Evidence 702. Were the Court to reach the issue, however, it appears that Plaintiff has not met her burden of proving that

13

Brogna is qualified to opine as to the matters set forth in the Declaration. Brogna does not have experience in police investigation work. By her own admission, she is a former Montgomery Township police officer, not a police detective. Brogna identifies no specialized training or other qualifications that qualify her to comment on the Township's police investigation report or the method by which the investigation was conducted. Her Declaration does not identify any method, standard, or reliable principle she used to form her opinion that the police investigation was improper. Further, the Declaration contains nothing to inform the court about any methodology Brogna may have used in reaching her conclusions.

## III.   SUMMARY JUDGMENT LEGAL STANDARD

Defendants' summary judgment motion should be granted only if "there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (quoting Fed. R. Civ. P. 56(c)). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477 U.S. at 248-52). Material facts are those which "might affect the outcome of the suit under the governing substantive law." *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006). In deciding a motion for summary judgment, "[t]he reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). However, to prevail on a motion for

summary judgment, "the non-moving party must present more than a mere scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007) (quoting *Anderson*, 477 U.S. at 252) (alteration in *Jakimas*).  In other words, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Abington Friends Sch.*, 480 F.3d at 256 (citing *Celotex*, 477 U.S. at 322-26).

In making this showing of a genuine dispute, "the non-movant may not rest on speculation and conjecture in opposing a motion for summary judgment." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F. 3d 660, 666 (3d Cir. 2016).

## IV.   DISCUSSION

### A.  Hostile Work Environment

#### 1.  Time bar

Defendants argue that only events occurring after September 6, 2012 should be considered in evaluating Plaintiff's hostile work environment claim under Title VII, and that only events occurring after January 4, 2013 should be considered with respect to her hostile work environment claim under the PHRA. In response, Plaintiff seeks to avail herself of the continuing violation doctrine in an effort to premise her hostile work environment claim on occurrences that fall outside the Title VII and PHRA limitations periods.

Where a plaintiff seeks recovery for a discrete discriminatory act such as termination, the plaintiff must file an administrative charge within the limitations period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Absent an exception, any claims based on unlawful employment practices that occurred more than 300 or 180 days prior to the date of filing – here,

15

July 3, 2013 – are barred. *Morgan*, 536 U.S. at 113; *Mikula v. Allegheny County*, 583 F.3d 181, 183, 185-86 (3d Cir. 2009).[2]

Hostile work environment claims, however, "are different in kind from discrete acts," *Morgan*, 326 U.S. at 115, and may be premised on occurrences that fall outside the limitations period if the plaintiff can show that a continuing violation exists. *Id.* at 117; *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013). To do so, a plaintiff must "show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." *Mandel*, 706 F.3d at 165-66 (citing *Morgan*, 536 U.S. at 122); *West v. Phila. Elec. Co.*, 45 F.3d 744, 754-55 (3d Cir. 1995) (holding that plaintiff must show that at least one act occurred within the filing period and that the harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination"), *abrogated on other grounds by Mandel*, 706 F.3d 157. The Third Circuit has cautioned that "[t]he reach of this doctrine is understandably narrow." *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014).

Two crucial factors are evaluated to determine whether this case falls within the narrow rubric of the continuing violation doctrine: the subject matter and the frequency of the alleged violations. *Mandel*, 706 F.3d at 166 (noting that "permanency is [no longer] required to establish a continuing violation"). Violations share the same subject matter when they "constitute the same type of discrimination." *Id.* at 166 n.2. They are frequent when "the harassment is 'more than the occurrence of isolated or sporadic acts of intentional discrimination.'" *West*, 45 F.3d at 755.

Plaintiff has demonstrated that at least one act constituting her hostile work environment claim occurred after September 6, 2012: the comment that if she were male, she could "just piss on the side of the truck," which occurred in a snowstorm in either 2012 or 2013. With respect to

---

[2] To bring suit in Pennsylvania under Title VII, a claimant must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice. *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013). The respective time period under the PHRA is 180 days. 43 Pa. Stat. § 959(h); *Mandel*, 706 F.3d at 164.

conduct occurring prior to September 6, 2012, the treatment Plaintiff experienced cannot be characterized as more than isolated or sporadic acts of discrimination. As discussed below, Plaintiff has not produced evidence to show that the Township's response to thefts in the Public Works Department, her treatment during her workers' compensation leave, the derogatory comments she heard, her termination for theft, or any of the other issues she identifies represented *frequent* acts *of the same subject matter*. Accordingly, in analyzing Plaintiff's hostile work environment claim, the Court will consider only those acts that occurred from September 6, 2012 to July 3, 2013.

### 2. *Prima facie* case

Title VII prohibits sexual harassment that is sufficiently severe or pervasive to effectively alter the terms and conditions of employment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). To establish that the employer is liable for a hostile work environment based on sex, Plaintiff must show that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) she was detrimentally affected by it; (4) a reasonable person of the same sex in that position would have been detrimentally affected; and (5) there is *respondeat superior* liability. *Andreoli v. Gates,* 482 F.3d 641, 643 (3d Cir. 2007). Defendants argue that Plaintiff has failed to demonstrate that she suffered from intentional discrimination based on sex, that the alleged conduct was severe or pervasive, or that there was *respondeat superior* liability.

In deciding whether harassment was sufficiently severe or pervasive to create a hostile work environment, no single factor is dispositive; the totality of the circumstances are considered. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). These include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's psychological well-being." *Id.* at 23; *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are insufficient to show a hostile work environment) (internal citation omitted).  It follows that the purview of Title VII does not extend to all workplace difficulties, even where the conduct at issue may be crass and unwarranted.  Similarly, allegations of isolated or single incidents of harassment, unless extremely serious, are insufficient to establish a cognizable hostile work environment claim.  *See Mandel,* 706 F.3d at 165-67; *Cibula v. Fox*, 570 F. App'x 129, 135-36 (3d Cir. 2014).

Plaintiff's hostile work environment claim fails because she has not provided evidence that the events that took place after September 6, 2012 were sufficiently severe or pervasive. She has identified one incident of harassment overtly based on sex during the limitations period: the comment, during a snowstorm in 2012 or 2013, that she "could just piss on the side of the truck" if she were male. Other than this comment, Plaintiff could not recall hearing any work-related sexually suggestive or offensive language within the relevant time period that were *based on sex*.

As to the derogatory comments based on sexual orientation, Plaintiff advances a sex stereotyping theory of discrimination, arguing that the derogatory comments she overheard about "faggots" and "gays" after she returned from leave in September 2012 are actionable as sex discrimination under Title VII. Neither the Supreme Court nor the Third Circuit has held that Title VII prohibits discrimination based on sexual orientation. *Bibby v. Phila. Coca Cola Bottling Co.*, 260 F.3d 257, 261 (3d Cir. 2001) ("It is clear . . . that Title VII does not prohibit discrimination based on sexual orientation."); *Kay v. Independence Blue Cross*, 142 Fed. Appx. 48, 49 (3d Cir. 2005) ("Title VII does not prohibit discrimination based on sexual orientation.") (citing *Bibby*, 260 F.3d at 261).

Even if the sexual orientation-based comments were actionable, these incidents, viewed cumulatively, are not sufficiently severe or pervasive to establish a *prima facie* hostile work

environment. The comment about pissing on the side of a truck, while crass and unwarranted, is alone insufficient to sustain a cognizable hostile work environment claim. *See Faragher*, 524 U.S. at 788 (holding that "offhand comments, and isolated incidents (unless extremely serious)" are not sufficient to sustain a hostile work environment claim); *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 863 (3d Cir. 1990) (two sexually stereotyped discriminatory comments do not constitute continuous, pervasive discrimination). Although Plaintiff testified to overhearing coworkers' comments about "faggots" and "gays" and to hearing from Johnson that similar comments were made about her, no such comment was actually directed at Plaintiff herself. *See Caver*, 420 F.3d at 248-49 (racist comments overheard by the plaintiff, directed at other individuals, were insufficient without more to establish a hostile work environment).

The conduct Plaintiff describes during the limitations period is not sufficiently frequent, severe, or pervasive, as a matter of law, to rise to the level of a hostile work environment. Accordingly, Defendant's motion for summary judgment must be granted with respect to Plaintiff's hostile work environment claim.

### B. Disparate Treatment: Sex Discrimination

Disparate treatment claims that are, like Plaintiff's, based on indirect evidence of discrimination are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999) (applying *McDonnell Douglas* framework to disparate treatment claims under Title VII). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Id*. If a *prima facie* case is established, the burden of production shifts to the defendant to present a legitimate, non-discriminatory reason for its actions. *Id.* If such a reason is proffered, the burden shifts back to the plaintiff to prove that the legitimate reasons offered by the defendant were a pretext for discrimination. *Id*.

1. *Prima facie* case

To establish a *prima facie* case of sex discrimination under Title VII, a plaintiff must show that she: (1) was a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) the circumstances of the adverse employment action imply discrimination. *Jones*, 198 F.3d at 410-11. The first three elements of Plaintiff's *prima facie* case are not disputed. Defendants argue, however, that Plaintiff has offered insufficient evidence to support the fourth element: an inference of discrimination with respect to the adverse action.

The most straightforward method for demonstrating an inference of discrimination is to show that "similarly situated" employees who were not in a protected class were treated more favorably. *See Mandel*, 706 F.3d at 170. It is also possible to establish a *prima facie* case without specific comparators, but to do so a plaintiff must provide other evidence to "establish some causal nexus between . . . membership in a protected class and the [adverse action.]" *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003). The "central focus" of this fourth element "is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." *Id.* (internal quotation marks omitted).

"[T]o be similarly situated, comparator employees must be similarly situated in all relevant respects." *Wilcher v. Postmaster General*, 441 F. App'x 879, 881-82 (3d Cir. 2011) (citations omitted). Important factors include the degree of similarity in the employees' "job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." *Id.* at 882 (internal citations omitted). In the discipline context, a plaintiff must show that the alleged comparator's acts "were of comparable seriousness to his own infraction, and that the [comparator] engaged in the same conduct without such differentiating or mitigating circumstances as would distinguish the [comparator's] conduct or the employer's resulting

treatment of [her]." *Tyler v. SEPTA*, Civ. A. No. 99-4825, 2002 WL 31965896, at *3 (E.D. Pa.

Nov. 8, 2002), *aff'd*, 85 F. App'x 875 (3d Cir. 2003); *see also McCullers v. Napolitano*, 427 F.

App'x 190, 195 (3d Cir. 2011) (in disciplinary context, courts consider whether the plaintiff and

comparator were engaged in comparable misconduct). "It is not the Court's place to speculate on

reasons that might undermine other employees' comparability, but it is Plaintiff's burden to

identify them so that any determination whatsoever can be made as to their similarity." *Mojica v.

Advance Auto Parts, Inc.*, No. 15-1418, 2016 U.S. Dist. LEXIS 2890, at *17, 2016 WL 107844

(E.D. Pa. Jan. 11, 2016). In making the showing of a genuine dispute for the purposes of

defeating summary judgment, Plaintiff may not rest on speculation and conjecture. *Ramara*, 814

F. 3d at 666.

The comparators Plaintiff has identified do not support the inference that her termination

was based on sex. She has failed to identify any similarly situated male comparator who was

disciplined less severely for comparable conduct. With respect to the $500 that went missing

from Heberlig's lunchbox, there was no final determination that a theft had occurred and no

employee was implicated in the incident. Although Plaintiff protests that the police were not

called to investigate the missing $500 – suggesting that the incident was unfairly treated less

seriously – the record shows that Heberlig explicitly declined police involvement. The theft of

Heberlig's toy and the incident involving the photos of Plaintiff's son, while unfortunate, are

minor disturbances and not comparable to the theft for which Plaintiff was terminated. Plaintiff

points to the scrap fund, arguing that Defendants' failure to discipline male employees who

monetized discarded Township metal supports an inference of discrimination with respect to her

termination. But the record does not reveal any female employees engaging in the same practice

who were treated differently from male employees. Although Plaintiff speculates that a female

Public Works employee was terminated for stealing cash from the scrap fund, the record

evidence is that the employee simply left her employment. Plaintiff also seeks to use as

21

comparators male co-workers who worked on personal vehicles and homes during work hours, and who were not disciplined for that conduct. However, Defendants have offered evidence that these employees compensated for the time spent on personal tasks by working longer hours or by using vacation, sick, or "comp" time and Plaintiff has offered nothing to contradict this explanation other than speculative testimony.

In addition, Plaintiff identifies as comparators a number of Police Department employees: the four male police officers who were not disciplined for taking firearms from the Police Department armory, and the officer who was not disciplined for sexual harassment of a female police dispatcher. Because the record indicates that Township Police Department employees do not share Plaintiff's job responsibilities or supervisors, they cannot be characterized as similarly situated to Plaintiff.

Finally, Plaintiff's generalized assertions that she was treated less favorably than her male co-workers in other contexts are not borne out by the record. The evidence demonstrates that male employees were also assigned to work in an environment where mold was present before the Township undertook mold remediation and bought safety equipment; that her request for outside employment was denied because of a conflict with her emergency response availability; that the saliva sample and search of her vehicle were consensual; that male employees were also subjected to consensual, warrantless searches of their vehicles; and that she was not denied workers' compensation benefits.[3]

---

[3] Plaintiff contends that the Township's Police Department report, which the Court has considered in formulating its opinion, is hearsay and therefore not competent evidence in a motion for summary judgment. To the contrary, the Third Circuit allows the use of hearsay and other unauthenticated evidence on a motion for summary judgment if the evidence may be admissible at trial. *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1234 n.9 (3d Cir. 1993) (finding that hearsay "can be considered on a motion for summary judgment [if] it is capable of being admissible at trial."). A police report is capable of being admissible at trial as a public record under Federal Rule of Evidence 803(8). *United States v. Versaint*, 849 F.2d 827 (3d Cir. 1988).

In short, Plaintiff has not adduced evidence to support the inference that any of the alleged adverse actions taken against her were motivated by her gender. Accordingly, she has failed to make out a *prima facie* case of sex discrimination.

2. Legitimate Non-Discriminatory Reason and Pretext

Even assuming *arguendo* that Plaintiff was able to make out a *prima facie* case of discrimination, summary judgment is nevertheless appropriate because Plaintiff has failed to show that the Defendants' proffered reason for terminating her is pretext for discrimination. To prevent summary judgment when the defendant has responded with a legitimate, non-discriminatory reason for its action, a plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Burton v. Teleflex Inc.*, 707 F.3d 417, 427 (3d Cir. 2013) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). When a plaintiff offers no affirmative evidence of discrimination but instead attempts to show pretext by demonstrating the weakness of an employer's proffered reasons, "the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that *each* of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Fuentes*, 32 F.3d at 764 (internal citations omitted). It is not enough for a plaintiff to "simply show that the employer's decision was wrong or mistaken"; instead, the "plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* at 765 (internal quotation marks and citations omitted).

The record does not reveal evidence that undermines Defendants' stated reason for terminating Plaintiff, namely her theft of Heberlig's iPhone. The Township conducted a thorough investigation into the incident: Gregan and the Human Resources Director interviewed and took statements from all employees present on the day of the theft, and conducted follow-up interviews after they received additional information. In making the decision to terminate Plaintiff, Gregan considered the interview statements of numerous Public Works employees, Plaintiff's own version of events, and the police report, which strongly implicated Plaintiff.

The procedural irregularities cited by Plaintiff, even if true, fall short of undermining the Defendants' proffered rationale.  Although the Township did not utilize progressive discipline and failed to provide Plaintiff with oral notification of her termination, the Township policy explicitly does not guarantee any specific termination procedure for non-uniformed employees.

Plaintiff has offered nothing more than speculative observations that she was erroneously implicated in the iPhone theft. Ultimately, given that the DNA test results that came back months after Plaintiff's termination were inconclusive, the record evidence suggests, at worst, that her termination may have been mistaken. Plaintiff cannot defeat summary judgment simply by showing that the employer's proffered reason was incorrect, since the factual dispute at issue is whether discriminatory animus motivated the employer – not whether the employer is wise, prudent, or competent. *Fuentes*, 32 F.3d at 765.

Accordingly, Plaintiff has failed to raise an issue of material fact that Defendant's stated reasons for rejecting Plaintiff were pretextual. The motion for summary judgment shall be granted on Plaintiff's sex discrimination claims under Title VII and the PHRA.

### C. Retaliation

Plaintiff asserts that her termination was retaliation for protected activity, namely participating in Maria Brogna and Richard Lesinski's employment discrimination claim in 2007. Retaliation claims under Title VII and the PHRA that rely on indirect evidence of retaliation are

also analyzed under the *McDonnell Douglas* burden-shifting framework. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (applying the *McDonnell Douglas* framework to Title VII and PHRA retaliation claims).[4]

### 1. *Prima Facie* Case

Plaintiff has failed to establish the requisite causal connection between her alleged protected activity and termination because there is no record evidence that Gregan, the person who made the decision to terminate her, was aware of her involvement in Brogna and Lesinksi's claim. Furthermore, because Plaintiff's termination is six years removed from her involvement in that matter, the timing of events is not "'unusually suggestive of retaliatory motive.'" *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)).

Plaintiff argues that even though there is no record evidence that Gregan was aware of her protected activity, his decision to terminate her following a discussion with Costello supports a discrimination claim under the "cat's paw" theory of liability endorsed in *Staub v. Proctor Hospital*, 562 U.S. 411, 422 (2011); *see McKenna v. City of Phila.*, 649 F.3d 171, 177-79 (3d Cir. 2011) (applying cat's paw analysis from *Staub* to a Title VII claim). However, the cat's paw theory described in *Staub* requires that the non-decisionmaker's discriminatory act be the "proximate cause of the ultimate employment action." *Staub*, 562 U.S. at 422. As the Third Circuit has noted, "proximate cause will not exist when the employer does not rely on the supervisor's biased report in taking the ultimate adverse action." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 331 (3d Cir. 2015) (internal quotation marks omitted). In *Jones*, the allegedly

---

[4] Under the *McDonnell Douglas* paradigm, a plaintiff asserting a retaliation claim must establish a prima facie case of retaliation by demonstrating that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between her protected activity and the employer's adverse action. *Id*. The burden of production then shifts to the employer to present a legitimate, non-retaliatory reason for having taken the adverse action. *Id*. If the employer advances such a reason, the burden shifts back to the plaintiff to demonstrate that the proffered explanation "was false, and that retaliation was the real reason for the adverse employment action." *Id*. (quoting *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006).

discriminatory act consisted of a supervisor's initial report of timesheet fraud.  *Id.*  The Third Circuit rejected cat's paw liability because the ultimate decision to fire the plaintiff was the result of an independent investigation and the allegedly discriminatory report merely "got the ball rolling" on that investigation.  *Id.*

Here, Costello's actions did not serve as the proximate cause of Plaintiff's termination. Gregan testified that he spoke with Costello prior to terminating Plaintiff, but that he based his decision on the Township's internal investigation into the iPhone theft and the police report. Since Gregan's decision to terminate Plaintiff did not rely on any conversation with Costello, the cat's paw theory of liability does not apply, and Plaintiff has failed to make out a *prima facie* case of retaliation.

### 2. Legitimate Non-Discriminatory Reason and Pretext

As discussed in greater detail *supra*, Defendants have articulated a legitimate non-discriminatory reason for Plaintiff's termination. To defeat summary judgment when the defendant has responded with such a reason, the plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.  Again, as discussed *supra*, Plaintiff has not met her burden of adducing evidence that would allow a factfinder to either disbelieve the Township's proffered reason for terminating her, or to conclude that invidious discrimination was more likely than not a motivating or determinative cause of Defendant's action. Accordingly, she has failed to show a genuine issue of material fact as to pretext, and Defendant's motion for summary judgment on Plaintiff's Title VII and PHRA retaliation claims shall be granted.

### D.   Aider and Abettor Liability Pursuant to PHRA

Plaintiff asserts claims for aider and abettor liability under the PHRA, alleging that the individual Defendants aided and abetted discrimination and retaliation in violation of the PHRA. The PHRA forbids "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice . . . ." 43 Pa. Cons. Stat. Ann. § 955(e). Plaintiff asserts that Costello and Gregan violated Section 955(e) by discriminating against female employees, creating a hostile work environment for female employees, and retaliating against female employees for activity protected under the PHRA.

However, Costello and Gregan cannot violate Section 955(e) when there is no corresponding Section 955(a) violation by the Township – their employer – to aid and abet. *Unangst v. Dual Temp Co., Inc.*, 2012 U.S. Dist. LEXIS 36852, *26 (E.D. Pa. March 19, 2012). Because Plaintiff cannot prevail on her hostile work environment, sex discrimination, or retaliation claims against the Township, there can be no individual liability against Costello and Gregan for aiding and abetting. Accordingly, Defendant's motion for summary judgment on Plaintiff's PHRA aider and abettor claims shall be granted.

### E.   Individual Liability of Defendants Costello and Gregan

Plaintiff's Amended Complaint names as Defendants Montgomery Township, Gregan, Costello. Because the Amended Complaint does not specify which Defendant each claim is asserted against, it is unclear whether Plaintiff is asserting Title VII and PHRA claims for hostile work environment, sex discrimination, and retaliation against Gregan and Costello. Plaintiff, however, concedes that there is no individual liability under Title VII. *See Nardella v. Phila. Gas Works*, 621 Fed. App'x 105, 106 n.1 (3d Cir. 2015) (finding that Title VII provides a cause of action only against employers) (citing *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d

1061, 1077-78 (3d Cir. 1996) (en banc)). Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's Title VII claims against Costello and Gregan.

  An appropriate order follows.

**Dated:**  December 23, 2016

          **BY THE COURT:**

          **/s/ Wendy Beetlestone**

          _____

          **WENDY BEETLESTONE, J.**